IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KELSEY TROTTA, | CASE NO. 2:23-cv-12258-TGB-CI |
| Plaintiff, | **Honorable Terrence C. Berg**<br>**Magistrate Judge Curtis Ivy, Jr.** |
| v. | |
| AMERICAN AIRLINES, INC., | **Demand for Jury Trial** |
| Defendant. | **Class Action** |

### FIRST AMENDED COMPLAINT

Plaintiff Kelsey Trotta, on behalf of herself and all others similarly situated, sues Defendant American Airlines, Inc. ("American"), and alleges as follows:

### INTRODUCTION

1. This is a lawsuit filed to redress injuries that Plaintiff and a class of consumers have suffered as a result of American's failure to disclose fees it receives from its sale of travel assistance products on the American website, in breach of American's conditions of carriage contract and in violation of Michigan law. *See* Exhibit 1.

2. American provides for the sale of travel assistance products sponsored by AGA Service Company, Inc. ("AGA") on its website. Specifically, American has an agreement with AGA wherein American arranges for travel assistance products to be sold in American's website booking path, with the term "booking path"

1

referring to the process in which a consumer purchases a ticket on a travel retailer's website.

3. The travel assistance products are not offered through a hyperlink, whereby a consumer looking to purchase a product is able to navigate directly from the website of American to AGA's website to explore the products; rather, the consumer must make an affirmative election as to purchasing a travel assistance product before the consumer is able to complete the desired purchase of a ticket for travel on American's website.

4. The marketing language used in promoting the travel assistance products leaves the consumer with the impression that the entire charge for the travel assistance product goes to cover the product's cost, and that American does not collect any fees as a result of selling the products on its website. Indeed, the American booking path states that the products are "recommended/offered/sold by Allianz Global Assistance" and "not American Airlines."

5. In reality, American receives a large, undisclosed fee for each travel assistance product sold through the booking path, and this conduct plainly violates the terms of the governing contract between American and Plaintiff (and all class members). Alternatively, this conduct unjustly enriches American.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Kelsey Trotta is an individual who, at the time she purchased the travel assistance product, was domiciled in, and was a citizen of, Michigan.

7. Defendant American Airlines, Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas. American routinely conducts business in the State of Michigan, enters into contracts with Michigan residents, and has a registered agent in Michigan.

8. This Court has jurisdiction over American because it entered into a contract with Plaintiff (the conditions of carriage contract) in Michigan, American committed a breach of contract in Michigan, and American caused injury to Plaintiff in Michigan.

9. Venue is proper in this Court because Plaintiff made her purchase of a travel assistance product in this county, and American conducts business in this county.

10. All conditions precedent to the bringing of this action have occurred, or American has waived them.

## FACTUAL ALLEGATIONS

11. AGA is a leading provider of travel assistance products in the United States and in Michigan, offering its products for sale on a host of travel retailer websites, including but not limited to, Defendant American Airlines, Delta Air

Lines, JetBlue Airways, Alaska Airlines, Marriott Corporation, and the National Railroad Passenger Corporation ("Amtrak").[1]

12. For each of these travel retailers, including American, AGA enters into an agreement with the retailer to offer its products for sale in the retailers' booking path, the mechanism by which consumers purchase tickets for travel. American, therefore, engages in the marketing of these travel assistance policies on its website.

13. On every retailer website booking path, including on American's website booking path, the consumer is not permitted to skip the election of a travel assistance product. Specifically, the consumer must click on a radio button to either purchase a product or to expressly decline the purchase of a product.

14. There is aggressive marketing of the assistance products. On the booking path of American Airlines, marketing includes a bright-green checkmark with the word "Recommended" next to the "yes" radio button; then it informs the consumer how many other consumers purchased a product in the preceding seven days. The marketing states that the products are "recommended/offered/sold by 3rd party, Allianz Global Assistance, ***not American Airlines.***" (emphasis added).

---

[1] Travel assistance products are wholly distinct from travel insurance products (*see e.g.,* MCL § 500.1283(i)) ("'Travel assistance services' means noninsurance services for which the consumer is not indemnified based on a fortuitous event, and as to which providing the service does not result in the transfer or shifting of risk that would constitute the business of insurance ... Travel assistance services are not insurance and not related to insurance."). This suit concerns only travel assistance products.

4

15. Nowhere in its travel booking path does American give consumers any indication that a significant portion of the money they pay for an assistance product goes to the airline as an undisclosed fee. In fact, American represents to the contrary, identifying AGA as the recommender, offeror, and seller of the product, with no indication that American itself is any of the foregoing. American does not disclose anywhere in its contract of carriage, or anywhere on its website, the amount of the fee it receives from purchases of these travel assistance products.

16. American intentionally fails to disclose the fee it receives for every product sold on its website because it is aware that consumers would be far less likely to purchase a travel assistance product if they knew the truth, namely that American receives hidden fees on a per-product basis.

17. Additionally, when a consumer elects to purchase a travel assistance product, the product's cost is provided on a standalone basis. Nowhere in this process does American disclose the travel assistance product fee it receives, nor is there any link in the booking path that a consumer can follow to identify the amount of the fee American receives.

18. Based upon this misleading presentation, the consumer once again is given the clear impression that the money spent on a trip assistance product is paid wholly to AGA. The consumer has no information to deduce that they are paying undisclosed fees to American.

19. Thus, American markets AGA products to its customers, encouraging them to buy the products on its website, but it fails to disclose the associated fees it receives. Again, customers pay this fee on a per-product basis.

20. Plaintiff purchased a flight from American's website on September 1, 2019. The departure date was October 6, 2019.

21. On September 1, 2019, while purchasing her airline ticket on American's website, Plaintiff also purchased an AGA trip assistance product. Plaintiff received a confirmation email from AGA with a copy of the travel assistance product, but at no point did American or AGA disclose to Plaintiff that a portion of her purchase price went to the airline as a hidden fee.

22. The American website booking path prompted Plaintiff to purchase travel assistance for her trip, and it required that she accept or decline the travel assistance product. American never disclosed that it received a fee, paid out of her payment for the product, in exchange for marketing the product to Plaintiff.

23. The governing contract between Plaintiff and American requires American to disclose on its website any fees it receives for optional products a consumer may purchase. Had American disclosed the amount of the fee it receives for each trip assistance product sold, Plaintiff would not have purchased the product.

24. American's conditions of carriage contract provides that "[i]f these Conditions of Carriage conflict with applicable laws, rules or security directives

from U.S. or foreign government agencies, the applicable laws, rules or security directives will govern." *See* Exhibit 1.

25. Thus, American's contract is governed by all relevant provisions of U.S. law. 14 C.F.R 399.85 states:

> If a U.S. or foreign air carrier has a website marketed to U.S. consumers where it advertises or sells air transportation, the carrier must prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation. Such disclosure must be clear, with a conspicuous link from the carrier's homepage directly to a page or a place on a page where all such optional services and related fees are disclosed. For purposes of this section, the term "optional services" is defined as any service the airline provides, for a fee, beyond passenger air transportation. Such fees include, but are not limited to, charges for checked or carry-on baggage, advance seat selection, in-flight beverages, snacks and meals, pillows and blankets and seat upgrades. In general, fees for particular services may be expressed as a range; however, baggage fees must be expressed as specific charges taking into account any factors (e.g., frequent flyer status, early purchase, and so forth) that affect those charges.

*See* 14 C.F.R 399.85(d). The provision additionally states that "[t]he Department considers the failure to give the appropriate notice described in paragraphs (a) through (e) of this section to be an unfair and deceptive practice within the meaning of 49 U.S.C. 41712." 14 C.F.R 399.85(f). Additionally, the Department considers marketing travel assistance products to be a service on the Airline's part (https://www.transportation.gov/individuals/aviation-consumerprotection/buyingticket).

26. The conditions of carriage contract is silent as to the disclosure of fees for travel assistance products, as is American's website. Therefore, the contract and American's website are in conflict with U.S. law, which requires such disclosure.

27. By stating that it is governed by U.S. law where the conditions of carriage conflict with U.S. law, American's conditions of carriage contract is governed by the requirements of 14 C.F.R 399.85.

28. Indeed, American's conditions of carriage contract acknowledges in multiple different sections that it is subject to the relevant provisions of the Code of Federal Regulations governing airlines, as well as subject to the rules of the Department of Transportation.

29. For example, "Department of Transportation" is a defined term in the contract, and American defines the Department as "[a] federal Cabinet department of the U.S. government that regulates aspects of air transportation." *See* Exhibit 1.

30. The conditions of carriage contract then makes multiple express references to being governed by Department of Transportation ("DOT") regulations. For example, the contract says American will "follow the DOT's compensation rules," without specifying any specific regulation. It then makes another reference to federal regulations, stating "DOT rules determine how much you're compensated based on how late you'll be to your stopover or destination." *See* Exhibit 1.

8

31. In sum, American's conditions of carriage contract expressly states that "[i]f these Conditions of Carriage conflict with applicable laws, rules or security directives from U.S. or foreign government agencies, the applicable laws, rules or security directives will govern," it then specifically identifies the U.S. Department of Transportation as the entity whose rules regulate air travel, and then it specifically states multiple times that the contract is subject to "DOT rules." DOT rules include 14 C.F.R. 399.85.

32. The fee American charged and received from Plaintiff was not disclosed, in violation of 14 C.F.R 399.85. As 14 C.F.R. 399.85(d) makes clear, American must not only disclose the fees it received, it must disclose their amounts as well. American failed to make any such disclosure and breached its contract with Plaintiff and all class members as a result.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this lawsuit as a class action pursuant to MCR 3.501 and Fed. R. Civ. P. 23.

34. **Class Definition.** Plaintiff proposes to represent two distinct classes, a national class ("National Class") and a Michigan subclass ("Subclass"). The National Class consists of and is defined as all United States citizens including Plaintiff who: (a) on or after September 1, 2015, (b) purchased a travel assistance product from a travel assistance provider through American's website after

purchasing an American flight, and (c) American received a fee as a result of the purchase of the travel assistance product. The National Class period will be from September 1, 2015, to the date of class certification (hereinafter the "National Class Period"). American's conditions of carriage contract, applicable to all National Class Members, has a uniform choice of law clause applying federal law when its contract conflicts with federal law, making a nationwide class appropriate, as identical law governs each National Class Member's claims. The Subclass consists of and is defined as all Michigan citizens including Plaintiff who: (a) on or after September 1, 2013, (b) purchased a travel assistance product from a travel assistance provider through American's website after purchasing an American flight, and (c) American received a fee as a result of the purchase of the travel assistance product. The Subclass period will be from September 1, 2013, to the date of class certification (hereinafter the "Subclass Class Period").

35. Plaintiff reserves the right to amend the Class Definitions, and/or add additional subclass definitions as discovery proceeds and to conform to the evidence.

36. Excluded from the National Class and Subclass are American, its agents, representatives, and employees; and any judge to whom this action is assigned and any member of that judge's staff and immediate family.

37. While the exact number of National Class and Subclass members is unknown at this time, Plaintiff submits that based upon information and belief, there

10

are hundreds of thousands of individuals throughout the United States who are potential National Class members in this action, as well as tens of thousands of Subclass members. Individual joinder of National Class and/or Subclass members is impracticable.

38. Plaintiff further alleges that the members of the National Class and Subclass will be ascertainable through American's electronic records, data, and databases, or alternatively, the records of AGA.

39. There are common questions of law and/or fact shared by Plaintiff and each member of the National Class and Subclass, which predominate over questions that may affect only individual members.

These common questions of law and/or fact include the following:

a. Whether American breached its contract with Plaintiff and National Class members by failing to disclose to Plaintiff and National Class members the fees it receives upon their purchase of a travel assistance product;

b. Whether American's conditions of carriage contract with Plaintiff and National Class Members permits American to charge and receive an undisclosed fee;

c. Whether American's conduct caused injury to Plaintiff and National Class Members;

11

    d. Whether American obtained a benefit from Plaintiff and all members of the Subclass in the form of a portion of the funds directed to their travel assistance purchases; and

    e. Whether it would be inequitable for American to retain the benefit Plaintiff and all Subclass members conferred on it.

    40. Plaintiff's claims are typical of the claims that would be asserted by other members of the National Class and Subclass in that, in proving her claims under the contract, she will simultaneously prove the claims of all members of both classes. The rights afforded under the contract are the same for Plaintiff and members of both classes. Each Class and Subclass Member had the same interaction with American on its website, as American's failure to disclose fees was uniform during both class periods.

    41. Plaintiff is a National Class and Subclass Member. She is an adequate representative of both classes because her interests do not conflict with the interests of other class members, and she will fairly and adequately protect the interests of the members of both classes. Additionally, Plaintiff is cognizant of her responsibility as a class representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Class counsel have extensive experience in class action litigation.

42. Maintaining this action as a class action is superior to other methods of adjudication and promotes the convenient administration of justice. This action will be manageable as a class action, and the prosecution of separate claims by individual National Class or Subclass members would create a risk of inconsistent or varying adjudications concerning individual members of the National Class or Subclass which would establish incompatible standards of conduct for American. Additionally, American has acted and refused to act on grounds generally applicable to all members of the National Class and Subclass, thereby making final declaratory relief concerning the National Class and Subclass as a whole appropriate. And, the separate claims of individual National Class and Subclass members are insufficient in amount to support separate actions.

43. Plaintiff's causes of action against American may be maintained as a class action pursuant to MCR 3.501 and Fed. R. Civ. P. 23, because there are numerous parties, the questions are of a common interest that predominate over individual ones, Plaintiff's claims are typical of the National Class and Subclass members' claims, Plaintiff will fairly and adequately assert and protect the interests of both classes, and a class action is superior to other methods of adjudication.

## COUNT I

## BREACH OF CONTRACT

44. Plaintiff re-alleges paragraphs 1-43 as if fully set forth herein and further alleges the following.

45. This is a count for breach of contract. Plaintiff brings Count I individually and for the National Class defined above.

46. American's conditions of carriage contract states that "[i]f these Conditions of Carriage conflict with applicable laws, rules or security directives from U.S. or foreign government agencies, the applicable laws, rules or security directives will govern." *See* Exhibit 1. Therefore, the conditions of carriage contract is governed by U.S. law, including those laws codified in the Code of Federal Regulations. As noted above, the Conditions of Carriage expressly references being subject to the authority of the Department of Transportation and "DOT rules."

47. The conditions of carriage contract, and American's website, are silent as to the disclosure of fees for optional services, putting the contract in conflict with U.S. law, which requires the disclosure of these fees.

48. 14 C.F.R 399.85(d) provides that "[i]f a U.S. or foreign air carrier has a website marketed to U.S. consumers where it advertises or sells air transportation, the carrier must prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation."

49. The conditions of carriage contract is a valid contract between American and each National Class member, including Plaintiff.

50. Plaintiff and each National Class member complied with their obligations under the conditions of carriage contract.

51. American's failure to disclose the fee it received from Plaintiff's purchase constitutes a violation of C.F.R 399.85(d), and thereby represents a breach of the applicable contract, as it is governed by that law.

52. As a result of this breach, Plaintiff and National Class members suffered damages in the form of payment of an undisclosed and contractually-prohibited fee.

## COUNT II

## UNJUST ENRICHMENT

53. Plaintiff re-alleges paragraphs 1-43 as if fully set forth herein and further alleges the following.

54. This is a cause of action for unjust enrichment. Plaintiff brings this count individually and on behalf of the proposed Subclass.

55. This cause of action is pled in the alternative to Plaintiff's breach of contract claim. Specifically, Defendant has taken the position before this Court that the conditions of carriage contract attached to Plaintiff's complaint does not apply to the transaction at issue in this litigation. *See* ECF No. 5 at 2 ("[T]here was no

15

contract between American and Trotta regarding the AGA travel service product."); *id.* at 8 ("American and Plaintiff did not enter into a contract regarding the AGA travel assistance product."). Moreover, Defendant has taken the position before this Court that it is not providing any service to Plaintiff, or any National Class or Subclass member, with respect to the travel assistance product at issue in this litigation. *See id.* at 15 ("[O]ptional services only include those provided by the airline and do not include services provided by other third-parties.").

56. Therefore, by American's own admissions to this Court, Plaintiff, as well as all members of the Subclass, have conferred a direct benefit on it in the form of a portion of the money they paid for purchase of a travel assistance product, and American provided no service with respect to that benefit. Instead, American simply kept nearly half of Plaintiff's money paid for the travel assistance product.

57. It would be inequitable for Defendant to retain this financial benefit from Plaintiff and Subclass members, particularly where American has admitted that it is providing no service to Plaintiff or the Subclass in return for the benefit conferred on it.

58. As a result of American's conduct, Plaintiff and the Subclass have suffered damages.

**PRAYER FOR RELIEF**

Named Plaintiff and the class request the following relief:

a. Certification of the National Class and Subclass;

b. A judgment against American;

c. Actual damages suffered by Plaintiff and the National Class and Subclass as a result of American's breach of contract and unjust enrichment;

d. The costs of suit, including reasonable attorney's fees and pre-judgment and post-judgment interest as provided by law;

e. Such other relief as the Court deems just and proper;

f. Plaintiff demands a jury on all claims so triable.

Dated: September 28, 2023                Respectfully submitted,

*s/ Alec H. Schultz*
Alec H. Schultz
HILGERS GRABEN PLLC
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305.630.8304
aschultz@hilgersgraben.com

AND

Thomas J. Rheaume, Jr. (P74422)
Sinéad G. Redmond (P85718)
BODMAN PLC
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
Telephone: 313.259.7777
trheaume@bodmanlaw.com
sredmond@bodmanlaw.com

*Counsel for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2023, I electronically filed the foregoing document with the Clerk of the court using the CM/ECF system, which sent notification of said filing to all CM/ECF participants.

*s/ Alec H. Schultz*
Alec H. Schultz

18